**David R. WILLIAMS, Plaintiff,**

v.

**EASTSIDE MENTAL HEALTH CENTER, INC., a corporation, Defendant.**

Civ. A. No. 79–G–0524–S.

United States District Court,
N. D. Alabama, S. D.

April 9, 1980.

On Motion for Reconsideration March 24, 1981.

Edward Still, Reeves & Still, Birmingham, Ala., for plaintiff.

Donald Shire, U. S. Dept. of Labor, Washington, D. C., for amicus curiae.

Frank O. Hanson, Jr., Birmingham, Ala., for defendant.

MEMORANDUM OPINION

GUIN, District Judge.

This is an action arising under the minimum wage and maximum hour provisions of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* It is now being heard on the cross-motions of both plaintiff and defendant for summary judgment.

The central issue involved in the motions for summary judgment is whether employees of the Eastside Mental Health Center are covered under the minimum wage and maximum hour provisions of the Fair Labor Standards Act. Resolution of this issue turns on whether the operation of the Eastside Mental Health Center is an "integral government function" within the scope of *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

The Fair Labor Standards Act was amended in 1974, Pub.L. No. 93–259, 88 Stat. 55, to extend its wage and hour provisions to virtually all state and local government employees. 29 U.S.C. § 203(d), (s)(5), (x). The plaintiff in the present case was a home manager at Eastside Mental Health Center, a corporation incorporated under the Alabama Non-Profit Corporation Act.

The plaintiff has alleged that the Eastside Mental Health Center is an "enterprise engaged in commerce" as defined by 29 U.S.C. § 203(s), as the defendant has admitted that two or more of its employees have handled goods which moved in interstate commerce and the defendant has testified that the "Transitional Home" cared for the mentally ill who were residents there (McManus deposition at 15; Stockdale deposition at 17–9). The plaintiff alleges that during his employment the defendant required the plaintiff to be on duty during a continuous 96-hour period, followed by 96 hours of free time, which resulted in a number of months in which the plaintiff worked in excess of 40-hour weeks at rates of pay less than that prescribed under the Act, 29 U.S.C. § 206(a).

The defendant argues that (1) the defendant is a public corporation and, therefore, under *National League of Cities v. Usery, supra,* is exempt from compliance with, or application of, the Fair Labor Standards Act, and (2) the defendant, Eastside Mental Health Center, Inc., is exempt from liability by § 259 of said Act.

In *National League of Cities,* the Supreme Court held the 1974 wage and hour provisions of the Act unconstitutional as they applied to state and local government employees generally because those sections of the Act "impermissibly interfere with the integral governmental functions of these bodies." 426 U.S. at 851, 96 S.Ct. at 2474, 49 L.Ed.2d at 257. The Court found that federal wage and hour determinations with respect to "functions ... which state and local governments are created to provide, [involving] services ... which the States have traditionally afforded their citizens," were matters essential to the separate and independent existence of those governments and, therefore, beyond the reach of congressional power under the commerce clause. *Id.* at 851. The Court expressly overruled *Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), which had upheld extension of the Act to employees of state schools, hospitals and like public institutions.

However, the Supreme Court limited the scope of this immunity to those public services or activities which involve traditional or integral governmental functions. *National League of Cities v. Usery,* 426 U.S. at 852, 96 S.Ct. at 1474, 49 L.Ed.2d at 257 (1976); *Public Service Co. of North Carolina, Inc. v. Federal Energy Regulatory Commission,* 587 F.2d 716, 721 (5th Cir. 1979). The Court spoke of those activities "performed by state and local governments in discharging their dual functions of administering the public law and furnishing public services." 426 U.S. at 851, 96 S.Ct. at 2474, 49 L.Ed.2d at 257. The meaning of this limitation is the central issue in this case. By overruling *Wirtz,* the Court implicitly included the operation of public schools, hospitals and like public health care institutions within the category of traditional integral government functions. However, *National League of Cities* does not articulate a specific test to be applied in determining whether a particular government function should be deemed to be within this protected area of state sovereignty.

The Sixth Circuit in *Amersbach v. City of Cleveland,* 598 F.2d 1033 (6th Cir. 1979), however, holds that certain elements are common to those services which the court has characterized as typical of those performed by governments. These elements are: (1) the government service or activity benefits the community as a whole and is available to the public at little or no direct expense; (2) the service or activity is undertaken for the purpose of public service rather than for pecuniary gain; (3) government is the principal provider of the service or activity; and (4) government is particularly suited to provide the service or perform the activity because of a community-wide need for the service or activity. *Amersbach* at 1037.

The present case should be viewed in relation to the elements noted above. It should be emphasized that the issue is not merely whether the defendant is a public corporation, but whether it provides a traditional government function. The defendant corporation is incorporated as a non-

profit corporation under Code of Alabama 1975, § 10–3–1, rather than the community mental health center statute, Code of Alabama 1975, § 22–51–1, because the statute allows only *one* facility *per county* to be incorporated under it and another agency had already filed for incorporation under that statute. The defendant acts jointly with this other agency, known as the Jefferson-Blount-St. Clair Mental Health/Mental Retardation Authority (hereinafter, "the Authority"), to carry out the purposes and functions of a § 22–51–1 corporation. The Authority has full and absolute power of ratification and approval of the defendant's operating budget, Articles of Incorporation and By-Laws. See Articles Four and Twelve of the By-Laws (Board Book). The directors of defendant are not elected, but are appointed by various public and governmental agencies and entities, pursuant to the requirements of § 22–51–1 *et seq.*, Code of Alabama 1975, the standards with which the defendant must comply in order to operate a center, and 42 U.S.C. § 2681 *et seq.* See Article Six of the By-Laws.

Additionally, the defendant has been assigned a specific geographical area, by the State, in which to provide services, Region M–5 as defined by the Alabama Community Mental Health Facilities Plan. The defendant is subject to audit by the Department of Examiners of Public Accounts and must submit to visitation, review, certification and evaluation by numerous state and federal agencies.

Thus, it appears that the defendant is performing an integral government function by providing services envisioned by Code of Alabama 1975, § 22–51–1, without pecuniary gain. Additionally, it is clear that the providing of mental health services is a service for which the government is "particularly suited" and for which there is a community-wide need, within the factors set out in *Amersbach v. City of Cleveland, supra.* Thus, this court holds that the Eastside Mental Health Center is a public corporation under the tests set out in *Amersbach* and is therefore exempt from compliance with the Fair Labor Standards Act under *National League of Cities v. Usery, supra.*

For the reasons stated herein, final judgment is due to be granted the defendant in this action.

A separate order in conformity herewith is being entered.

## MEMORANDUM OPINION

### On Motion For Reconsideration

This is an action arising under the minimum wage and hour provisions of the Fair Labor Standards Act (FLSA) as amended, 29 U.S.C. § 201 *et seq.* It came to be heard originally by this court upon cross-motions for summary judgment by both plaintiff and defendant. Summary judgment was entered for defendant on April 10, 1980, based on a finding that defendant was constitutionally immune from application of the Fair Labor Standards Act due to the tenth amendment, as addressed in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Plaintiff petitioned for reconsideration on the grounds that defendant was not shown to be a state government agency. He was joined by the Secretary of Labor as *amicus curiae.* This court entered an order on June 26, 1980, that the case be reopened for good cause shown in order to address the issue raised by plaintiff in his motion to reconsider.

Plaintiff was employed by defendant, Eastside Mental Health Center, from February 1977 to May 1979. During this period his work required him to be on the premises for a continuous 96-hour period followed by 96 hours of off-duty time. Plaintiff alleges that defendant did not pay him compensation as prescribed by provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207. He claims the additional compensation allegedly due him under the FLSA. Defendant claims exemption from the Act due to the holding in *National League of Cities.*

The principal issue in this action is whether employees of defendant Eastside Mental Health Center are covered under the minimum wage and maximum hour provision of the Fair Labor Standards Act.

Specifically, the questions to be resolved are: (1) what test is to be used to determine if an entity's operation is an "integral governmental function" within the scope of *National League of Cities v. Usery*, and (2) does defendant corporation qualify under that test and thereby become exempt from compliance with the Act through tenth amendment protection?

In *National League of Cities*, the Supreme Court held the 1974 amendment to the Act involving wage and hour provisions was unconstitutional as applied in general to state and local government employees because those sections of the Act "impermissibly interfere with the integral governmental functions of these bodies." 426 U.S. at 851, 96 S.Ct. at 2474, 49 L.Ed.2d at 257. The Court found that federal wage and hour determinations with respect to "functions ... which state and local governments are created to provide, [involving] services ... which the States have traditionally afforded their citizens," were matters essential to the separate and independent existence of those governments and, therefore, beyond the reach of congressional power under the commerce clause. *National League of Cities, supra,* at 851, 96 S.Ct. at 2474. The Court expressly overruled *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), which had upheld the extension of the Act to employees of state schools, hospitals and like public institutions.

This immunity, however, was limited by the Court to those public services or activities which involve traditional or integral governmental functions. *National League of Cities v. Usery*, 426 U.S. at 852, 96 S.Ct. at 1474, 49 L.Ed.2d at 257 (1976); *Public Services Co. of North Carolina v. Federal Energy Regulatory Commission*, 587 F.2d 716, 721 (5th Cir. 1979). The Court described the immune activities as those "performed by state and local governments in discharging their dual functions of administering the public law and furnishing public services." 426 U.S. at 851, 96 S.Ct. at 2474, 49 L.Ed.2d at 257.

The scope of this limitation is the central issue in this case. By overruling *Wirtz*, the Court implicitly included the operation of public schools, hospitals and like public health care institutions within the category of traditional integral governmental functions. However, *National League of Cities* does not articulate a specific test to be applied in determining whether a particular governmental function should be deemed to be within this protected area of state sovereignty.

Plaintiff argues that the test to be used is the two-step test that the National Labor Relations Board (NLRB) uses to determine if it has jurisdiction over a labor dispute. The Fifth Circuit adopted this test in *NLRB v. Highview, Inc.*, 590 F.2d 174 (5th Cir. 1979), in order to determine if a nursing home qualified as a political subdivision which would be exempt from the National Labor Relations Act (NLRA). According to the Fifth Circuit's decision in *Highview*, an employer is "a political subdivision if either (1) the entity was created directly by the state, so as to constitute a department or administrative arm of the government, or (2) if the entity is administered by individuals who are responsible to public officials or to the general electorate." *Highview*, at 176.

Plaintiff contends that defendant must first meet the NLRB's test in *Highview* as a prerequisite to a determination of whether or not its operation involves a traditional or integral governmental function. Plaintiff argues that defendant is covered by the Fair Labor Standards Act as it is an "enterprise engaged in commerce" as defined by 29 U.S.C. § 203(s)(5) and does not constitute a political subdivision or agency of the state government even though it might be fulfilling an integral governmental function. It is plaintiff's belief that *National League of Cities* does not apply until the entity first qualifies as a political subdivision or state agency under the test articulated in *Highview*.

Defendant claims that it is a public corporation performing an integral governmental function and is therefore exempt from the

FLSA because of *National League of Cities*. It contends that the proper test is not *Highview*, but the one adopted by the Sixth Circuit in *Amersbach v. City of Cleveland*, 598 F.2d 1033 (6th Cir. 1979).

*Amersbach* states that certain elements are common to those services which the court has characterized as typical of those performed by governments. These elements are: (1) the government service or activity benefits the community as a whole and is available to the public at little or no direct expense, (2) the service or activity is undertaken for the purpose of public service rather than for pecuniary gain, (3) government is the principal provider of the service or activity, and (4) government is particularly suited to provide the service or perform the activity because of a community-wide need for the service or activity. *Amersbach*, 1037.

The defendant contends that even if the *Highview* test is employed, it qualifies as a political subdivision and should be held exempt from compliance with the FLSA. Finally, defendant argues that if it is not found to fall under a *National League of Cities* exemption, it is excused from liability by 29 U.S.C. § 259.

 This court holds that Eastside is exempted from compliance with the FLSA, as it falls under *National League of Cities* protection, using the *Amersbach* test. Alternatively, it also is exempt from compliance using the *Highview* test, as defendant qualifies as a political subdivision under part two of that test in that its administrators are responsible to public officials.

The present case should be viewed in relation to the four elements noted above in *Amersbach*. Furthermore, the *Highview* test involves the NLRA, not the FLSA. It is used merely to determine whether or not an employer is covered by the NLRA and therefore subject to the jurisdiction of the NLRB. The FLSA has no such board that oversees the implementation of the Act.

It should be emphasized that the main issue is whether the defendant provides a traditional governmental service, not merely whether or not it is a political subdivision or public corporation. The FLSA may not be applied "to directly displace the States' freedom to *structure integral operations* in areas of traditional governmental functions." *National League of Cities*, 426 U.S. at 852, 96 S.Ct. at 2475, 49 L.Ed.2d at 257 (emphasis added). In this action, the defendant is one of twenty-five community mental health centers in Alabama. Together, these twenty-five centers form the entire mental health system established for and by the State of Alabama. Two are operated by purely governmental agencies, twenty are incorporated as public corporations under Code of Alabama 1975, Section 22–51–1, *et seq.*, and three, including the defendant, are incorporated as nonprofit corporations under Code of Alabama 1975, Section 10–3–1, *et seq.* Because the community mental health center statute allows only one facility per county to be incorporated under it and another agency had already filed for incorporation pursuant to that statute in the three-county area of Jefferson, Blount and St. Clair, the defendant was incorporated under the statute pertaining to nonprofit corporations.

Defendant acts jointly with this other agency, known as the Jefferson-Blount-St. Clair Mental Health/Mental Retardation Authority (hereinafter, "the Authority"), to carry out the purposes and functions of a Section 22–51–1 corporation. The Authority has full and absolute power of ratification and approval of defendant's operating budget, articles of incorporation and by-laws. Additionally, the defendant, Eastside, has been assigned a specific geographical area, by the State, in which to provide services through the Alabama Community Mental Health Facilities Plan.

For these reasons it is apparent that defendant is part of the "structure" that the State of Alabama set up to provide mental health care services. These services are clearly of those types for which the government is "particularly suited" and for which there is community-wide need, within the factors set out in *Amersbach*. These services are traditional governmental services for which the provider is shielded from

compliance with the FLSA by *National League of Cities.*

Alternatively, if defendant must first satisfy the *Highview* test as a political subdivision before an assessment can be made of whether or not it is performing an integral governmental function, it also meets this additional requirement. In *Highview*, a nursing home was held not to be a political subdivision primarily because its directors were "self perpetuating" and "not directly responsible to the public officials of the county." *Highview*, at 177.

In this case, Eastside's board of directors is not elected but externally appointed by agencies ranging from public or governmental to private organizations, the majority of which come from the public or governmental sector. Furthermore, defendant must submit copies of minutes of every board of directors' meeting to the State Department of Mental Health and to the Authority. Additionally, Eastside is subject to: audit and review by the State Examiners of Public Accounts for the State of Alabama, periodic visitation and review by the Department of Mental Health for the State of Alabama, mandatory compliance with the Standards for Community Mental Health Centers established by the Department of Mental Health for the State of Alabama, and compliance with the State of Alabama's competitive bid laws when purchasing goods. Defendant is exempt from payment of state sales tax, is a member of, and its employees covered by, the State of Alabama retirement and pension system, and is prohibited from owning any real property.

The extent of state control and accountability of defendant's administrators to state agencies and public officials renders it a political subdivision under part two of the *Highview* test. Eastside is subject to more controls of the state than the private operator of a county hospital was in *Board of Trustees of Memorial Hospital v. NLRB*, 624 F.2d 177 (10th Cir. 1980), in which the hospital was found to be a political subdivision. In addressing the political subdivision issue in *National League of Cities*, the Supreme Court stated:

As the denomination "political subdivision" implies, the local governmental units which Congress sought to bring within the Act derive their authority and power from their respective States. Interference with integral governmental services provided by such subordinate arms of a state government is therefore beyond the reach of congressional power under the Commerce Clause just as if such services were provided by the state itself.

*National League of Cities*, 426 U.S. at 855, n. 20, 96 S.Ct. at 2476, n. 20, 49 L.Ed.2d at 260, n. 20 (emphasis added).

In this action Eastside is performing an integral governmental service as a subordinate arm of the state. It is one of the twenty-five health centers which make up the total mental health care system of the State of Alabama.

For the reasons stated herein, final judgment is due to be granted to defendant in this action.

A separate order in conformity herewith is being entered.