424 So.2d 61 (1982)
William FRANCIS, Individually and On Behalf of All Others Similarly Situated, Appellant,
v.
CITY OF TALLAHASSEE, Appellee.
No. AJ-104.
District Court of Appeal of Florida, First District.
December 10, 1982.
James O. Shelfer, of Gardner, Shelfer, Mendelson & Duggar, Tallahassee, for appellant.
Bryan W. Henry, City Atty. and James R. English and Lewis E. Shelley, Asst. City Attys., of Henry, Buchanan, Mick & English, P.A., Tallahassee, for appellee.
McCORD, Justice.
William Francis, individually and on behalf of all others similarly situated, appeals from the trial court's final summary judgment determining that bus drivers employed by the City of Tallahassee mass transit bus system (Taltran) are not covered by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA). We reverse.
The relevant facts to this appeal are essentially undisputed. The plaintiffs seek damages from the City of Tallahassee and a ruling from the trial court to the effect that Taltran is subject to the minimum wage and maximum hour provisions of the FLSA. Specifically, they seek overtime pay for hours worked in excess of 40 hours per week.
Prior to December 3, 1973, the local Tallahassee bus service was owned and operated by a private company, City Transit, Inc. At that time, its drivers had a right to over-time pay under the FLSA, as the City concedes. On that date, however, with the assistance of federal monies provided under the Urban Mass Transit Act (UMTA), 49 U.S.C. § 1601 et seq., Tallahassee purchased the bus service. After purchasing the system Tallahassee retained the same drivers, and the function and duties of the system's personnel remained about the same. The federal government continues to subsidize Taltran to the extent of paying approximately 50% of the system's operating losses. The actual fare charged returns less than one-half of the actual cost of the operation. Further, for budgetary, personnel, and employee relations purposes, Taltran is treated much the same as other municipal departments, and its employees are subject to the same rules and regulations as other city employees. The trial court granted its final summary judgment in reliance upon National *62 League of Cities v. Usery (NLC), 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) and Amersbach v. City of Cleveland, 598 F.2d 1033 (6th Cir.1979).
In NLC, the U.S. Supreme Court held that the 10th Amendment prevented the application of the overtime pay provisions of the FLSA to employees of states or their political subdivisions who are engaged in traditional government functions. Id. at 855, 96 S.Ct. at 2475, 49 L.Ed.2d at 259-60. A nonexclusive list of such traditional functions included police protection, sanitation, public health, parks and recreation, hospitals, and schools. NLC, however, afforded little guidance as to the identification of such traditional governmental functions. Later, in Hodel v. Virginia Surface Mining & Reclamation Association, Inc., 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the court announced a three-pronged test for evaluating whether a commerce clause regulation, such as the FLSA, contravenes the 10th Amendment:
[I]n order to succeed, a claim that congressional commerce power legislation is invalid under the reasoning of National League of Cities must satisfy each of three requirements. First, there must be a showing that the challenged regulation regulates the "State as States." Second, the federal regulations must address matters that are indisputably "attribute[s] of state sovereignty." And third, it must be apparent that the State's compliance with the federal law would directly impair their ability "to structure integral operations in areas of traditional governmental functions." (Citations omitted).
Id. at 287-8, 101 S.Ct. 2365-6, 69 L.Ed.2d at 23. The key prong to this test is the third one. United Transportation Union v. Long Island Railroad Company (LIRR), 455 U.S. 678, 687, 102 S.Ct. 1349, 1354, 71 L.Ed.2d 547, 553 (1982). While noting that the determination of whether a federal law impairs a state's authority with respect to "areas of traditional functions" is difficult, the U.S. Supreme Court has observed:
In essence, National League of Cities held that under most circumstances federal power to regulate commerce could not be exercised in such a manner as to determine the role of the States in our federal system. This Court's emphasis on traditional governmental functions and traditional aspects of state sovereignty was not meant to impose a static historical view of state functions generally immune from federal regulation. Rather, it was meant to require an inquiry into whether the federal regulation affects basic State prerogatives in such a way as would be likely to hamper the state government's ability to fulfill its role in the Union and endanger its "separate and independent existence."

Just as the federal government cannot usurp traditional state functions, there is no justification for a rule which would allow the State, by acquiring functions previously performed by the private sector, to erode federal authority in areas traditionally subject to federal statutory regulations. (Citations omitted; emphasis supplied).
LIRR, 455 U.S. at 686-87, 102 S.Ct. at 1354-55, 71 L.Ed.2d at 554-5. Applying these tests, the Third Circuit Court of Appeals has concluded, and we agree, that the local mass transit systems are within the purview of the FLSA. Kramer v. Newcastle Area Transit Authority, 677 F.2d 308 (3d Cir.1982). That court noted that local mass transit systems have been historically owned and operated by private companies; that the federal government, through the UMTA, has demonstrated an active involvement in local mass transportation; and, that the move away from private transit systems into public transit systems was started and effected by federal government which provided the financial support, through the UMTA, to allow the changeover. Further, it retains through its matching funds program an intimate involvement in such public systems. Id. at 309-10. Considering the pervasive influence of the federal government in this area, as well as Tallahassee's relatively recent entry into the field, one could hardly conclude that local mass transit is a "traditional function." Additionally, we find it difficult to *63 understand how the imposition of overtime wages on the City of Tallahassee for these particular employees will impair or endanger the separate and independent existence of a state or its political subdivisions. LIRR, 455 U.S. at ___, 102 S.Ct. at 1354-55, 71 L.Ed.2d at 554-5; Kramer, at 311 (Garth, concurring).
We find nothing in Amersbach v. City of Cleveland, 598 F.2d 1033 (6th Cir.1979), which dictates a different conclusion. In Amersbach, the Sixth Circuit Court of Appeals determined that the operation of a municipal airport was an integral function of city government and thus immune from the minimum wage and maximum hour provisions of the FLSA. As that court observed, however, privately owned airports serving municipalities are virtually unknown, unlike mass transit systems which, for the most part, were until recently private entities. Id., at 1038. Further, the City's reliance on Jackson Transit Authority v. Amalgamated Transit Union, Local 1285, ___ U.S. ___, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982) is misplaced, for there the issue was whether section 13(c) of the UMTA by itself permits a union to sue in federal court for violation of collective bargaining agreements. It contains no mention at all of the FLSA, and we decline to extend its rationale to this case.
The trial court relied upon the decision and opinion of the United States Circuit Court of Appeals, Second Circuit, in United Transportation Union v. Long Island Railroad Co., 634 F.2d 19 (2d Cir.1980), which was reversed by the United States Supreme Court subsequent to the trial court's disposition of this case [United Transportation Union v. Long Island Railroad Company, 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982)]. It should also be noted that the trial court had no opportunity to consider the Third Circuit's opinion in Kramer v. Newcastle Area Transit Authority, supra, as it was released after the trial court's disposition of this case.
Accordingly, for the reasons set forth above, this cause is reversed and remanded to the trial court for further proceedings consistent with this opinion.
BOOTH and WENTWORTH, JJ., concur.