660 F.2d 388
 25 Wage & Hour Cas. (BN 142, 91 Lab.Cas. P 34,018,
92 Lab.Cas. P 34,105
 RICHLAND COUNTY ASSOCIATION FOR RETARDED CITIZENS, a Montana
Corporation, Plaintiff-Appellee,
v.
Ray MARSHALL, Secretary of Labor, United States Department
of Labor; and Xavier M. Vela, Administrator of
Wage and Hour Division, United States
Department of Labor,
Defendants-Appellants.
 No. 78-2532.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 14, 1980.
Decided Oct. 9, 1981.
 
 W. William Leaphart, The Leaphart Law Firm, Helena, Mont., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Montana.
 Before WRIGHT and ALARCON, Circuit Judges, and FRYE*, District Judge.
 ALARCON, Circuit Judge:
 
 
 1
 Richland County Association for Retarded Citizens (Richland) brought suit against the Secretary of Labor in district court in Montana, seeking a declaratory judgment that employees of the Sidney Group Home, operated by Richland, were exempt from the provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. The Secretary counterclaimed to enjoin Richland from violating the FLSA. The district court, relying on National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), found for Richland, holding that application of the FLSA to employees of the group home was unconstitutional under the tenth amendment.[1] The court also denied the Secretary's counterclaim. We reverse.
 
 FACTS
 
 2
 The facts are undisputed. Richland is a private, non-profit corporation[2] which operates the Sidney Group Home (Home), a residential home for mentally retarded adults in Richland County, Montana.[3] Richland was formed in early 1976, with the encouragement and assistance of the Development Disabilities Division of the State of Montana Department of Social and Rehabilitation Services (DDD). After its formation, Richland entered into a contract with the DDD, whereby Richland would provide residential care and training for mentally retarded adults in return for payment from the state. DDD granted Richland $9,000 to enable Richland to make a down payment on and furnish a group home.
 
 
 3
 Under the contract, Richland maintained autonomy and control over "the methods, times, means and personnel for furnishing purchased services" to retarded citizens. Richland elected a Board of Directors which administered and operated the Home, and hired and paid the Home employees.
 
 
 4
 Richland's funding to operate the Home comes from three sources: the federal government, the state government, and donations from private individuals and entities.[4] Residents are referred to the Home by state agencies, families, or physicians.
 
 
 5
 Richland hired a husband and wife team to be Home parents. They were paid a fixed monthly salary which was less than required by the FLSA.
 
 
 6
 Pursuant to an inquiry by one of the Home parents, the Department of Labor conducted an investigation and concluded that the FLSA was applicable to the Home, and that the current salary/hour structure violated the FLSA. Richland sought a judicial declaration that the FLSA did not apply to employees of the Home.
 
 ANALYSIS
 
 7
 The single issue presented here is whether employees of a private non-profit corporation that provides services for mentally retarded persons and is in part funded by the state are exempt from the minimum wage/maximum hour provisions of the FLSA.
 
 
 8
 Before the district court and on appeal Richland contended that application of the wage and hour provisions of the FLSA to its employees was unconstitutional because it "runs afoul of the principles laid down by the United States Supreme Court in National League of Cities v. Usery, 426 U.S. 833 (96 S.Ct. 2465, 49 L.Ed.2d 245) (1976)." The district court agreed. Our review of National League of Cities leads us to the opposite conclusion.
 
 
 9
 In National League of Cities v. Usery, the plaintiffs brought an action which "asserted in effect that when Congress sought to apply the Fair Labor Standards Act provisions virtually across the board to employees of state and municipal governments, 'it infringed a constitutional prohibition' in favor of the States as States." Id. at 837, 96 S.Ct. at 2467. The Court agreed, stating that "the dispositive factor is that Congress has attempted to exercise its Commerce Clause authority to prescribe minimum wages and maximum hours to be paid by the States in their capacities as sovereign governments." Id. at 852, 96 S.Ct. at 2474 (emphasis added) The Court noted that the federal system of government imposes limits on the "authority of Congress to regulate the activities of the States as States by means of the commerce power." Id. at 842, 96 S.Ct. at 2470. Because the decision of how much to pay those whom it employs is an essential attribute of state sovereignty, Congress cannot abrogate the state's authority to make wage decisions for its employees. In reaching this conclusion the Court carefully distinguished between federal regulation of private persons and business enterprises "necessarily subject to the dual sovereignty of the government of the Nation and of the State ..." and regulations "directed, not to private citizens, but to the States as States." Id. at 845, 96 S.Ct. at 2471. Indeed, the plaintiffs in Usery specifically acknowledged the broad power of Congress to regulate private businesses through the Commerce Clause. Id. at 841, 96 S.Ct. at 2469.
 
 
 10
 Richland is neither a state nor municipality, and is not an agency of a state or municipality. Rather, it is a private, non-profit corporation. The private corporation, not the State of Montana, elects the Association's Board of Directors. The private corporation, not the State of Montana, retains control over the "methods, times, means, and personnel" for furnishing the contracted-for services. The private corporation, not the State, hires and pays the employees. The corporation, in every sense of the word, is a private business. The minimum wage and hour provisions of the FLSA applicable to the private sector have long been recognized as a valid exercise of Congress' Commerce Clause power, a result reaffirmed in National League.
 
 
 11
 We find significant support for our holding in Hodel v. Virginia Surface Mining & Reclamation Association, Inc., --- U.S. ----, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). In Hodel, mine operators attacked a federal mining act, claiming that because the act displaced state regulations in an area of integral state functions (land use regulations), the law was unconstitutional under the National League of Cities decision. The Supreme Court disagreed. National League principles were not implicated, because the act worked directly on the private entities, and the impact on the state was not direct. The Court stated that:
 
 
 12
 in order to succeed, a claim that congressional commerce power legislation is invalid under the reasoning of National League of Cities must satisfy each of three requirements. First, there must be a showing that the challenged statute regulates "States as States ...." Second, the federal regulation must address matters that are indisputably "attributes of state sovereignty...." (T)hird, it must be apparent that the States' compliance with the federal law would directly impair their ability "to structure integral operations in areas of traditional functions." Id. at 2366 (citations omitted).
 
 
 13
 In Hodel, the Court stated that the challenge to the Act "must fail because here, in contrast to the situation in National League of Cities, the statute at issue regulates only 'individuals and businesses necessarily subject to the dual sovereignty of the government of the Nation and the State in which they reside.' " Id. at 2369.
 
 
 14
 Richland is in the same position as the private entities in Hodel. The FLSA operates directly on Richland, a private corporation. Thus, the requirement that the regulation operate on a state as a state is not met. Consistent with Hodel, we must hold that the FLSA is constitutionally applicable to Richland.
 
 
 15
 The judgment is REVERSED.
 
 
 16
 FRYE, District Judge, dissenting.
 
 
 17
 This case deals with the way the State of Montana chooses to handle its dependent mentally retarded adults. Instead of institutionalizing them away from their local communities and providing them with different caretakers for every eight-hour shift, Montana's policy is to care for its dependent citizens in family-oriented residences in local communities with professional live-in group home parents. Montana has chosen to implement this policy by contracting with private non-profit corporations who, in turn, hire a husband and wife at a fixed monthly salary, which is less than required by the minimum wage/maximum hour provisions of the Fair Labor Standards Act (FLSA). Plaintiff-Appellee, Richland, contends the FLSA does not apply to its husband-and-wife team who serve as live-in, 24-hour-a-day caretakers.
 
 
 18
 Congress cannot abrogate a state's authority to make wage decisions for its employees who perform integral-government functions such as fire prevention, police protection, sanitation, public health, and parks and recreation. National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The issues in this case are:
 
 
 19
 1. Is the care of state dependent mentally retarded adults an integral-government function; and, if so,
 
 
 20
 2. May employees of a private, non-profit organization who perform this integral-government function be exempted from the minimum wage/maximum hour provisions of the FLSA?
 
 
 21
 The care of retarded citizens who have no families or others to care for them, or whose families have abdicated their responsibilities to them, or whose families do not have the resources to fulfill their responsibilities to them, has always fallen upon the state. This responsibility is clearly an integral-government function. The more difficult question is whether the ruling in National League of Cities can apply to employees of a private non-profit corporation which has contracted with a state to perform an integral-government function.
 
 
 22
 Richland is an entity created and supported by the State of Montana to further its policy of providing family homes rather than institutions for mentally retarded adults. The facts are overwhelming that Richland is part and parcel of the State of Montana. Richland did not exist until the State assisted in its formation. It was created for the sole purpose of providing housing, treatment, and training for eight mentally retarded adults for whom Montana has responsibility. After the State caused Richland's creation, the State provided money to it for the purchase of a home. The State wrote the contract and oversees its performance. Almost all of the money for the support of the disabled adults and for the maintenance of the group home is provided by the State or through federal grants. Richland is in the business of public service and not pecuniary gain. Were Richland to default in its duties or were the group home parents to abuse or mistreat their charges, Montana would certainly have the duty to intervene because a state cannot contract away its ultimate responsibility for an integral-government function.
 
 
 23
 The application of FLSA will directly affect the relationship between Montana and Richland, as well as between Richland and the group home parents by mandating the wages and hours for the group home parents. If Montana hired the group home parents directly, the FLSA would not apply. The majority's ruling will displace Montana's method of carrying out its integral-government function of caring for its mentally disabled citizens by the dictates of the Department of Labor and the FLSA. This opinion is based on these facts and does not mean that states will have the right to haphazardly contract all services to the private sector at a labor rate cheaper than that for equivalent services provided by the private sector exclusively.
 
 CONCLUSION:
 
 24
 Because Richland essentially stands in the position of the State of Montana in providing an integral-government service, and because the minimum wage/maximum hour requirements of the FLSA as applied to Richland constitute direct interference with Montana's exercise of its sovereignty, I conclude the FLSA does not apply under the rule of National League of Cities.
 
 
 
 *
 Hon. Helen J. Frye, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The tenth amendment provides: "The powers not delegated to the United States by the Constitution, not prohibited by it to the States, are reserved to the States respectively, or to the people."
 
 
 [2]
 We express no opinion on the constitutionality of applying the FLSA to a public corporation, under direct state control, which provides services to the state. See Williams v. Eastside Mental Health Center, Inc., 509 F.Supp. 579 (N.D.Ala., 1980)
 
 
 [3]
 In 1973, the Montana Legislature passed an act designed to deinstitutionalize developmentally disabled adults by providing training and treatment for them in family-oriented residences in local communities, rather than in large state-operated institutions. Mont.Rev.Codes Ann. § 71-2001. Funding for and management of the residences was to be provided by nonprofit corporations, not by the State of Montana or its political subdivisions
 
 
 [4]
 The specifics of the Home's funding are as follows:
 (1) Each retarded citizen residing in the Home receives full Supplemental Security Income payments amounting to $167.80 federal money and $104.00 state money per month. Of each payment $26.60 is allocated to the individual resident for personal needs and the remainder deposited in the Home account.
 (2) Under the contract with the State, the Home receives an additional $150.00 per resident from the State. Under the contract, if federal matching money is not available, the State is not obligated to allocate state funds to the Home. Of each $150.00 payment, $15.00 goes directly to the resident.
 (3) The Home receives donations from the private sector.