**Vernon W. DOVE and Other Plaintiffs Similarly Situated, Plaintiffs-Appellants,**

v.

**CHATTANOOGA AREA REGIONAL TRANSPORTATION AUTHORITY (CARTA), Defendant-Appellee.**

No. 81–5636.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 4, 1982.

Decided March 4, 1983.

Linda R. Hirshman (argued), Kalman D. Resnick, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiffs-appellants.

George M. Derryberry (argued), Chattanooga, Tenn., for defendant-appellee.

William T. Coleman, Jr., Donald T. Bliss, O'Melveny & Myers, Washington, D.C., for amicus curiae American Public Transit Assoc.

J. Paul McGrath, Asst. Atty. Gen., U.S. Dept. of Justice, Joseph M. Woodward (argued), U.S. Dept. of Labor, Washington, D.C., for intervenor.

Before KEITH and CONTIE, Circuit Judges and VAN PELT *, Senior District Judge.

KEITH, Circuit Judge.

Plaintiff-Appellant, Vernon Dove, represents a class of bus drivers who are employed by the Chattanooga Area Regional Transit Authority (CARTA). The class alleges that CARTA's failure to compensate them at the rate of time and a half for all hours over forty per week is a violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. 201 *et seq.* The district court held that the Tenth Amendment barred an action for overtime compensation against

* Hon. Robert Van Pelt, Senior U.S. District Judge, District of Nebraska, sitting by designa-    tion.

CARTA. For the reasons set forth below, we vacate the district court's order 539 F.Supp. 36 and remand for further proceedings.

CARTA operates a mass transit system in the Chattanooga area. It was created in 1971 pursuant to Chapter 515, 1970 Public Acts, as amended by Chapter 160, 1971 Public Acts of Tennessee. At that time, the privately operated mass transit systems in the area were in the process of being converted to public ownership. In 1973, a federal grant to the City of Chattanooga allowed it to acquire all of the existing mass transit lines and place them under public control.

Governmental entities, however, were involved in the planning and maintenance of the transit systems long before they came under public control. Many of the mass transit systems that now make up CARTA were the creations of state and municipal governments. Some received a great deal of federal, state, and local subsidies. Some of them were even subject to local enactments which required that they operate for the public convenience. Because of the extensive role of government, historically and presently, the American Public Transit Association (APTA) sought to participate in this action as *amicus curiae*. *Amicus curiae* status was granted and the district court allowed APTA to file certain responsive materials.[1]

On July 21, 1981, the district court granted CARTA's motion for summary judgment. The court relied on the Supreme Court's holding in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); this Court's holding in *Amersbach v. City of Cleveland*, 598 F.2d 1033 (6th Cir.1979); and the Second Circuit's holding in *United Transportation Union v. Long Island Railroad*, 634 F.2d 19 (2d Cir.1980). The claims of the class action members for declaratory relief, back pay for the three-year period prior to the filing of the suit, and damages were accordingly dismissed.

This case presents an issue similar to the one presented in *National League of Cities*. In that case, several municipalities and states, through Plaintiff National League of Cities, challenged the application of the overtime provisions of the FLSA to municipal employees. The National League of Cities argued that requiring municipalities to pay overtime compensation would seriously curtail the quality and quantity of municipal services.

The Supreme Court agreed. It held that the overtime provisions of the FLSA could not be applied to governmental entities performing integral state functions without contravening the Tenth Amendment.[2] In his opinion for the Court, Justice Rehnquist distinguished the role of state and local governments as employers from the role of private employers. He noted:

> The dilemma presented by the minimum wage restrictions may not seem immediately different from that faced by private employers who have long been covered by the Act and who must find ways to increase their gross income if they are to pay higher wages while maintaining current earnings. The difference, however, is that a state is not merely a factor in the "shifting economic arrangements" of the private sector of the economy, *Kovacs v. Cooper*, 336 U.S. 77, 95 [69 S.Ct. 448, 458, 93 L.Ed. 513] (1949) (Frankfurter, J., concurring), but is itself a coordinate element in the system established by the framers for governing our Federal Union.

*Id.* 426 U.S. at 848–49, 96 S.Ct. at 2472–73.

However, the Supreme Court's opinion in *National League of Cities* did not provide

---

**1.** The American Public Transit Association also filed an *amicus brief* on appeal urging affirmance. On the other hand, the Secretary of Labor intervened on behalf of the United States in support of the plaintiff-appellants. The Secretary, who has responsibility for the administration and enforcement of the Fair Labor Standards Act, was "concerned that coverage of the Act not be improperly limited."

**2.** The Tenth Amendment provides:
> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

much guidance for determining the nature of an integral state function. In *Amersbach v. City of Cleveland,* Judge Phillips, speaking for this court, set out several relevant criteria to guide such a decision. He opined:

> By analyzing the services and activities which the Court characterized as typical of those performed by governments, we note certain elements common to each which serve to clarify and define a method by which a protected government function may be identified. Among those elements are: (1) the government service or activity benefits the community as a whole and is available at little or no direct expense; (2) the service or activity is undertaken for the purpose of public service rather than for pecuniary gain; (3) government is the principal provider of the service or activity; and (4) government is particularly suited to provide the service or provide the activity because of communitywide need for the service or activity.

*Id.* at 1037.

Since this court last spoke in *Amersbach,* the Supreme Court has considered the Tenth Amendment issue several times. In *Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the Court set out its own criteria for deciding whether federal action was unconstitutional under *National League of Cities:* (1) Does the federal enactment regulate the state as a state?

(2) Does the enactment address matters that are indisputably a matter of state sovereignty? and (3) Would compliance with the congressional mandate impair the state's ability "to structure integral operations in areas of traditional governmental functions?" *Id.* at 288, 101 S.Ct. at 2365.

Most recently, the Supreme Court reversed a Second Circuit ruling which applied *National League of Cities* to invalidate the application of the Federal Railway Act to a state-owned railroad. *United Transportation Union v. Long Island Railroad Company,* 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982). The Court held that the operation of interstate passenger and freight railroads "has traditionally been a function of private industry, not state or local governments." *Id.* 102 S.Ct. at 1354.

Our reading of relevant Supreme Court precedent leads us to conclude that summary judgment was inappropriate. The Court's holdings in *Hodel* and *United Transportation* support the view that *National League of Cities* should not be read as broadly as CARTA would have us read it. Moreover, we note that the Court declined to disturb a Third Circuit judgment which refused to exempt a local public transit authority from the overtime provisions of the FSLA. *Kramer v. New Castle Transit Authority,* 677 F.2d 308 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983).[3]

---

**3.** In *Kramer v. New Castle Transit Authority,* 677 F.2d 308 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983), the Third Circuit held that a local mass transit system operated by a municipality was not immune from suit under *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Citing the Supreme Court's language in *United Transportation Union v. Long Island Railroad Company,* 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982), the *Kramer* court stated: "We think that the state involvement in local transit systems, increasing with more systems coming under state control in recent years, does not alter the "historical reality" that the operation of mass transit systems, 'is not among the functions traditionally performed by state and local governments.' " *Kramer,* 677 F.2d at 310.

The Supreme Court's denial of certiorari in *Kramer* contrasts sharply with its action in two other cases presenting the same issue. *Donovan v. San Antonio Metropolitan Transit Authority,* 457 U.S. 1102, 102 S.Ct. 2897, 73 L.Ed.2d 1309 (1982); *Garcia v. San Antonio Metropolitan Transit Authority,* 457 U.S. 1102, 102 S.Ct. 2897, 73 L.Ed.2d 1309 (1982). In each of those cases, the Court vacated the district court's order enjoining the Secretary from applying the overtime provisions of the FLSA to the defendants, municipally owned mass transit systems. The Court remanded the cases to the district court for further consideration in light of its decision in *United Transportation.*

While the notion of what is traditional is not a static concept, "there is no justification for a rule which would allow the States, by acquiring functions previously performed by the private sector, to erode federal authority in areas traditionally subject to federal statutory regulations." *United Transportation,* 102 S.Ct. at 1355. In this case, a traditionally private service has become predominantly a public service due to federal aid. *Kramer,* 677 F.2d at 309–10. In such a case, the concerns stated in *National League of Cities* are not implicated. It would indeed be peculiar to hold that federal aid for transit created a situation where a state which provides transit service is immune from federal labor regulations.

We are well aware that the district court did not have the benefit of some of the Court's recent decisions on the Tenth Amendment issue. However, those decisions mandate that the plaintiffs receive a trial on the merits. Accordingly, the order of summary judgment is vacated and the case remanded to the district court.