**C.D. JOINER, on Behalf of himself and others similarly situated, Plaintiffs,**

and

**United States of America, Plaintiff-Intervenor,**

v.

**CITY OF MACON, Defendant.**

**Civ. A. No. 79–287–MAC.**

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 13, 1986.

David L. Mincey, Macon, Ga., Linda R. Hirschman, J. Peter Dowd, Chicago, Ill., for plaintiffs.

W. Warren Plowden, Jr., Macon, Ga., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

OWENS, Chief Judge.

1. This action was brought pursuant to the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219 (West 1985)("FLSA") by plaintiff transit employees seeking backpay for unpaid overtime compensation, liquidated damages, prejudgment interest, costs, and attorney's fees.

## HISTORY OF THIS LITIGATION

2. Plaintiffs Joiner and others ("plaintiffs") who filed consents to sue in this action [1] have been employed by the City of Macon transit system ("defendant") at all times material to this action.

3. Upon cross motions for summary judgment filed by the parties, this court held on April 27, 1981:

> ... it cannot be said that Macon Transit System is an integral operation in an area of traditional governmental functions which would be exempted from the requirements of the FLSA.

Accordingly, the overtime provisions of the FLSA were deemed to apply to Macon's transit system and the plaintiffs were deemed entitled to judgment on liability as a matter of law. That decision was affirmed in *Joiner v. City of Macon*, 699 F.2d 1060 (11th Cir.1983). Thereafter defendant's petition for writ of certiorari was denied by the Supreme Court of the United States on March 4, 1985, without explanation or comment. *Joiner v. City of Macon*,

---

1. The original complaint, filed on December 20, 1979, was accompanied by 34 consents to sue. Thereafter, at various times, 15 additional consents to sue have been filed.

— U.S. ——, 105 S.Ct. 1391, 84 L.Ed.2d 781 (1985).

4. Defendant's petition for writ of certiorari was pending because of the Supreme Court's consideration and decision on February 19, 1985, in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. ——, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (*"Garcia"*). In *Garcia* the Supreme Court overruled its earlier decision in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)(*"National League"*) and "reject[ed], as unsound in principle and unworkable in practice, a rule of state immunity from federal regulation that turns on a judicial 'appraisal of whether a particular governmental function is 'integral' or 'traditional,' " *Garcia,* 105 S.Ct. at 1016, and held "…that Congress' action in affording [public] employees the protections of the wage and hour provisions of the FLSA contravened no affirmative limit on Congress' power under the Commerce Clause," *id.* at 1020.

5. Thereafter defendant moved this court to reexamine its April 27, 1981, summary judgment opinion on the issue of liability. On August 30, 1985, this court, denying such motion, ruled:

> If the Supreme Court were of the opinion that *Garcia* required a reconsideration of this Court's opinion it would have so stated in its order. Having failed to so state the Supreme Court's denial meant that the City of Macon lost its final opportunity to overturn the decision of this court and the Eleventh Circuit Court of Appeals.

## FINDINGS OF FACT

6. Defendant's payroll records reveal, and accordingly there is no dispute that since at least December 20, 1977, each plaintiff except C.W. McCoy[2] worked numerous work weeks for Macon in excess of forty hours per week for which they were paid only their regular straight time rate of pay. Plaintiffs were not paid one and one-

half their regular rate of pay for each hour worked in excess of forty hours per week. The parties have reviewed Macon's payroll data and have stipulated to the hours worked and rates of pay for each pay period, from which each party has submitted to the court their respective calculations of back pay due.

The parties continue to be in dispute over whether plaintiffs Griffin, Bone, W. Jackson and Kitchens are exempt as executive or administrative personnel. *See* 29 U.S.C.A. § 213(a)(West 1965). The parties are given leave for 90 days to engage in discovery in regard to those issues. Those issues will then be resolved by the court.

7. In order to determine the period of time for which Macon is liable to plaintiffs and the appropriate back pay, liquidated damages, and other relief, it will be necessary to review the pertinent history of the application of FLSA to public transit employees.

a. In 1966 Congress extended FLSA coverage to state and local government employees except for drivers, operators, and conductors in the mass-transit industry; however, even these exceptions were removed by Congress in 1974. Congress' application of FLSA to such public employees was ruled to be within Congress' power in *Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).

b. Since March 15, 1973, defendant has operated a public transit system in Macon. Prior thereto the transit system was privately operated by Bibb Transit Company, a privately owned corporation.

c. In 1976 the Supreme Court overturned *Maryland v. Wirtz* in *National League* finding that the FLSA could not be constitutionally applied if the state activity is an "integral operation in areas of traditional governmental functions," *National League,* 426 U.S. at 852, 96 S.Ct. at 2474. Local mass transit systems were not specified in *National League* as immune from FLSA coverage.

---

2. Plaintiff C. W. McCoy was terminated on April 9, 1977. The backpay period in this case begins on December 20, 1977 (see ¶ 12, *infra* ).

Then, on remand, the district court in *National League* made clear that the Supreme Court's holding did not provide public bodies with general immunity from FLSA. The district court noted and incorporated in its decision a Department of Labor special enforcement policy concerning states and political subdivisions which, *inter alia,* established a procedure by which such constitutionally immune activities would be determined, *National League,* 429 F.Supp. 703. The Department of Labor's enforcement policy identified certain areas as traditional governmental functions, such as schools, hospitals, fire, and police protection, and also identified other functions as not traditional governmental, naming specifically "the operation of a railroad by a state" as noted by the Supreme Court in *National League,* 429 F.Supp. at 706 (citing 426 U.S. at 854 n. 18, 96 S.Ct. at 2475 n. 18).

On December 21, 1979, the Department of Labor formally amended its FLSA interpretive regulations to provide that publicly owned mass transit systems are not entitled to imunity under *National League,* 44 Fed.Reg. 75, 630 (1979)(codified at 29 C.F.R. § 775.3(b)(3)(1983)) and since that time no regulations have issued restricting FLSA's application to mass transit.

. d. Throughout the period following December 21, 1979, other courts of appeals, besides the Eleventh Circuit in this case, found and confirmed FLSA coverage of publicly operated mass transit.[3] And during this period the Supreme Court decided *United Transportation Union v. Long Island R.R. Co.,* 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982), in which the Court ruled that commuter rail service provided by the state-owned Long Island Rail Road did not constitute a traditional governmental function and hence did not enjoy constitutional immunity under *National League.*[4]

e. On April 27, 1981, this court found defendant and its transit system to be covered by the FLSA.

8. From the foregoing it must be found that defendant, aware of the Department of Labor's regulations and other courts' decisions, pursued its honest differences with those regulations and decisions until this court's adverse ruling on April 27, 1981. From and after that date defendant knew its transit system was covered by FLSA.

## CONCLUSIONS OF LAW

9. Defendant has asked the court to reexamine and change the summary judgment order on the issue of liability that has already been affirmed on appeal, citing *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)("*Chevron*") for the proposition that the Supreme Court's decision in *Garcia* should be applied prospectively only. What defendant ignores is that this court ruled on liability on April 27, 1981, pursuant to the FLSA, and such ruling was affirmed and the Supreme Court denied defendant's petition for a writ of certiorari approximately two weeks after *Garcia* was decided.[5]

■ Moreover the *Chevron* factors regarding nonretroactivity are a compendium of federal common law principles for use in the absence of federal statutory provisions. Federal common law is inapplicable where

**3.** *Dove v. Chattanooga Area Regional Transportation Authority,* 701 F.2d 50 (6th Cir.1983); *Kramer v. New Castle Area Transit Authority,* 677 F.2d 308 (3rd Cir.1982), *cert. denied,* 459 U.S. 1146, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983); *Francis v. City of Tallahassee,* 424 So.2d 61 (Fla. App.1982).

**4.** Also during this period the district court in which *Garcia* originally arose had found the public transit system there to be a governmental function and immune from FLSA coverage. That judgment was vacated and remanded by the Supreme Court for further consideration in light of *Long Island RR,* 457 U.S. 1102, 102 S.Ct. 2877, 73 L.Ed.2d 1309; the district court's judgment remained unchanged on remand, 557 F.Supp. 445 (W.D.Tex.1983), but, was ultimately reversed in *Garcia.*

**5.** "[S]ince the Supreme Court is well aware of how to avoid the effects of applying one of its rulings retroactively.... the declination to do so ... suggests that the Supreme Court intended its decision to be applied retroactively...." *Lamore v. Inland Div. of GM,* 550 F.Supp. 1005, 1014 (S.D.Ohio, 1982), *aff'd,* 714 F.2d 140 (6th Cir.1983)(citations omitted).

Congress has determined by statute—as here the FLSA and the Portal to Portal Act, 29 U.S.C.A. §§ 251–262 (West 1985)—the underlying policy and its enforcement. *Milwaukee v. Illinois and Michigan,* 451 U.S. 304, 312–14, 101 S.Ct. 1784, 1790–91, 68 L.Ed.2d 114, 123–25 (1981). *See also Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 575, 87 L.Ed. 838, 841–42 (1943)(Federal common law can be applied, if at all, only "[i]n [the] absence of an applicable Act of Congress...."); *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 195, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117, 147 (1978).

■ The *Chevron* factors, even if applicable, do not compel nonretroactivity.[6] First, with regard to the establishment of a new principle of law or deciding an issue of first impression whose resolution was not clearly foreshadowed, "[T]he 'clear break' principle has usually been stated as the threshold test for determining whether or not a decision should be applied nonretroactively", *United States v. Johnson,* 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202, 214 (1982). Here there was no "clear break"; *Garcia* is an expansion of the law, not a change in the law. As the pertinent history of the application of the FLSA to public transit employees reveals, even after the Supreme Court's decision in *National League,* the federal appellate courts—including the Eleventh Circuit Court of Appeals in this case—and the U.S. Department of Labor regulations on De-

cember 21, 1979, consistently applied FLSA to publicly owned mass transit systems. *See Garcia,* 105 S.Ct. at 1007–09.

The history of the FLSA, its purposes, and its enforcement scheme, demonstrate a strong congressional purpose to protect individual employees' non-waivable statutory right to overtime pay, to provide broad access to the courts, and to require compensatory damage awards. *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 739–41, 101 S.Ct. 1437, 1444–45, 67 L.Ed.2d 641 (1981). This analysis answers the second factor of *Chevron* and compels retrospective application of *Garcia.* Nor is there any inequity—*Chevron's* third factor—by the retroactive application of a statute defendant purposefully chose to ignore even after this court and the court of appeals determined otherwise. Accordingly, defendant is liable for the time periods as set forth in the applicable provisions of the FLSA as amended.

■ 10. FLSA, as amended by the Portal to Portal Act, provides that a cause of action for the recovery of unpaid overtime compensation may be brought within two years after the cause of action accrued except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. *See,* 29 U.S.C.A. §§ 216(b), 255 (West 1985).[7] This action was brought on December 20, 1979, at which time the Court in *National League* specifically had found

---

**6.** In *Chevron* the Court set forth three factors: First, the decision to be applied non retroactively must establish a new principle of law, either by .overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, ... we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.... Finally, we have weighed the inequity imposed by retroactive application.... *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

**7.** Additionally, section 10 of the Portal to Portal Act, 29 U.S.C. § 259, would excuse all liability for unpaid overtime if the employer pleads and

proves its conduct "was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation of [the Administrator of the Wage and Hour Division of the Department of Labor] or any administrative practice, or enforcement policy of such agency...." While defendant has pled this defense it has not and cannot prove "good faith reliance" because, as noted above, at no time did the Department of Labor excuse the payment of overtime in the publicly owned mass transit industry. In fact, its regulations dated December 21, 1979, specifically listed publicly owned mass transit as one of the functions unaffected by *National League,* a decision which not only failed to specify mass transit as an industry within its holding but indeed suggested strongly that it was not. *See National League,* 426 U.S. at 854 n. 18, 96 S.Ct. at 2475 n. 18.

that governmental operations of schools, hospitals, police, and fire were constitutionally exempt from FLSA coverage. Mass transit, although claimed in *National League* to be exempt, was not so found by the Supreme Court and instead the Court noted and distinguished its earlier holding in *United States v. California*, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936) to the effect that "common carriage by rail in interstate commerce" was not an integral part of governmental activities, *National League*, 426 U.S. at 854 n. 18, 96 S.Ct. at 2475 n. 18, 49 L.Ed.2d at 259 n. 18, *see also National League*, 429 F.Supp. at 706 (1977)(on remand). In *National League*, upon remand, the district court made clear that each public activity would be scrutinized to determine whether it was covered or immune from FLSA. *See National League*, 429 F.Supp. at 703.

On December 21, 1979, the Department of Labor issued its interpretive regulation that publicly owned mass transit systems were subject to FLSA, and this court ruled that defendant's transit system was covered by FLSA on April 27, 1981. Given this history, defendant's failure and refusal to pay overtime compensation as required by FLSA has unquestionably been willful since on and after April 27, 1981. In *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1039 (11th Cir.1985) the court said:

> ... a violation is willful [under 29 U.S.C. § 255] if the employer knows or has reason to know that his or her conduct is governed by the Act. *Brennan v. Heard*, 491 F.2d 1 (5th Cir.1974). An employer need not proceed with knowledge that his or her actions are contrary to the Act in order for willfulness to be found. *Id.* An action is "willful" if the employer knew that the Act was "in the picture" regardless of the defendant's good faith. *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.1971), cert. denied, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). See also *Marshall v. A & M Consolidated Independent School District*, 605 F.2d 186, 190–91 (5th Cir.1979)(actual awareness of the law is unnecessary to establish willfulness; knowledge is imputed.)

*See also Castillo v. Givens*, 704 F.2d 181, 193 (5th Cir.1983), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147; *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85 (10th Cir.1983). Accordingly, all claims filed herein will be deemed to embrace violations arising within three years preceding the filing of the consent to sue except for those violations occurring before April 27, 1981, in which case plaintiffs' claims will be deemed to embrace violations arising only within the preceding two years.

■ 11. The FLSA, as amended by the Portal to Portal Act, also compels the payment of "... an additional equal amount [of unpaid overtime compensation] as liquidated damages," 29 U.S.C.A. § 216(b)(West Supp.1985), unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Act]," 29 U.S.C.A. § 260 (West 1985). In *Reeves v. International Telephone and Telegraph Corp.*, 616 F.2d 1342, 1353 (5th Cir.1980) the court said:

> As decisions have shown, the presumption of willfulness stands, absent positive and compelling proof of good faith. It is not enough, for instance, to plead and prove ignorance of the wage requirements. Knowledge will generally be imputed to the offending employer. *Marshall v. A & M Consolidated Independent School District*, 605 F.2d 186 (5th Cir.1979). Nor does the complete ignorance of the possible applicability of the Act shield the employer from liability for liquidated damages. *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.1972). Good faith requires some duty to investigate potential liability under the Act. *Barcellona v. Tiffany English Pub, Inc.* [597 F.2d 464 (5th Cir. 1979)].

Lack of good faith is demonstrated when an employer "knows, or has reason to know, that his conduct is governed by the [Act]." *Brennan v. Heard*, 491 F.2d 1, 3 (5th Cir.1974).

As noted above, the defendant had to have known after April 27, 1981, that its refusal to pay overtime would result in not only the recovery of unpaid overtime but also liquidated damages. Accordingly, liquidated damages must be awarded for each violation on and after April 27, 1981.

■ For those violations preceding April 27, 1981, however, prejudgment interest is wholly appropriate in consideration of the losses in wages sustained by these wage earner employees for years and the loss in value of delayed payment by reason of inflation. Moreover a failure to award such interest would create an incentive to employers to violate the Act. *Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55, 58 (2nd Cir.1984).[8]

12. FLSA further provides, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action," 29 U.S.C.A. § 216(b)(West Supp. 1985). Accordingly, plaintiffs within 180 days may file a petition for attorney's fees and costs, failing which attorney's fees and costs will be deemed abandoned.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED;

a. That defendant pay to each plaintiff for unpaid overtime, liquidated damages, and prejudgment interest an amount calculated in accordance with this order within 30 days.

b. That the parties complete discovery within 90 days and then within 30 days present to the court their respective positions and supporting memoranda in regard to plaintiffs Griffin, Bone, W. Jackson, and Kitchens.

---

**8.** Prejudgment interest in lieu of liquidated damages for pre-December 21, 1979, violations had been calculated at 7% simple interest in accordance with Georgia statutes, O.C.G.A. § 7–4–2.